UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
vs.                      ) No.  03-30047-MAP
                         )
MELVIN RICHARDSON        )

PRELIMINARY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO SUPPRESS

**FACTS**

On September 25, 2005 the defendant was the operator of a motor vehicle traveling Northbound on Route 91. A Mass State Police Officer, observing traffic on the highway, believed the defendant to be exceeding the speed limit and conducted a traffic stop of the vehicle. The defendant was unable to produce a license but identified himself and provided the vehicle's registration. The officer conducting the stop returned to his vehicle and requested assistance. A second Trooper arrived on scene and took up a position with respect to the defendant vehicle. During the course of the stop the officer who initiated the stop learned through a registry inquiry the defendants right to operate had been suspended. During the hiatus between the stop of the vehicle and the transmission of the registry information, the defendant exited his motor vehicle and was ordered by police to place his hands on the car. The defendant was thereafter placed under arrest and searched and both officers searched the interior of the motor vehicle seizing certain items of evidence. During the course of the defendant's custody at the scene the defendant was questioned by both officers while the several searches of the vehicle occurred.

**ARGUMENT**

A seizure is either an application of physical force, even if extremely slight or a show of authority to which the subject yields.  <u>United States v. Hodari D.</u>, 499 U.S. 621, 625-626 (1991); U.S.C.A. Const. Amend 4) "A seizure occurs when the officer, by means of physical force or show of authority has in some way restrained the liberty of a citizen." <u>Terry v. Ohio</u>, 329 U.S. 1, 19 N. 16 (1968). In the instant case there can be no doubt that the defendant had been seized within the constitutional meaning of the word.  The defendant exited the motor vehicle.  He then attempted to walk toward the cruiser after having been detained, at the scene, for a substantial period of time and was restrained from doing so by being placed under arrest.

The touchstone of the analysis under the Fourth Amendment is always the reasonableness in all the circumstance of the particular governmental invasion of a citizen's personal security. <u>Terry v. Ohio</u>, 392 U. S. 1 (1968).

Reasonableness relies upon a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.  <u>United States v. Brignoni-Ponce</u>, 422 U. S. 873 (1975).

In <u>Terry</u> the holding was confined to situations in which officers had a factual basis to conclude the person with whom he was dealing was armed and presently dangerous.

The purpose of a limited search is not to discover evidence of a crime, but to allow an officer to pursue his investigation without fear of violence.

In <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, (1977), the Supreme Court expanded the <u>Terry</u>

holding to embrace orders by police officers to compel drivers to exit automobiles during routine traffic stops without any articulated basis to conclude the occupant was armed or dangerous. Determining an order to exit is a <u>de minimus</u> intrusion given the <u>propriety</u> of the initial stop. <u>Mimms</u> @ 111.

In the present case the defendant exited the vehicle after an extended period of time. Although under the Fourth Amendment he could validly be ordered to exit the motor vehicle, nothing in the Court's decision's since <u>Mimms</u> has suggested that presence outside the vehicle standing alone permits a full scale <u>Terry</u> frisk.  Here the officers physically restrained the defendant and conducted a search of the defendant and his motor vehicle without any factual basis to justify such a search.

An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.  <u>Florida v. Royer</u>, 460 U. S. 491 (1983).

In this case the stop was for the purpose of issuing a speeding citation to the operator. After the defendant's search the defendant had been determined to have been operating after suspension. A crime which permitted the police to make an arrest or issue a citation.

An investigative stop which continues indefinitely may not be justified as an investigative stop.  Although no rigid time period may be applied to the determination of reasonableness the brevity of the invasion of the individuals Fourth Amendment interest is an important factor in determining whether the seizure is so minimally intrusive as to be justifiably based on reasonable suspicion.  <u>United States v. Sharpe</u>, 470 U. S. 675 (1984).

In <u>Maryland v. Wilson</u>, 519 U. S. 408 (1997).  The Supreme Court established police officers were permitted to order passengers from stopped motor vehicles pending completion of

the stop.  Petitioner, State of Maryland wanted the Court to rule that officer may forcibly detain a passenger for the entire duration of stop.  The Court specifically declined to reach such a conclusion because the issue was not presented by the facts of the case and expressed doubt the Fourth Amendment would permit such a detention.

While concern for officers safety may justify the minimal additional intrusion of ordering a driver and passenger out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search.

Here the officers had no articuable basis to presume the defendant was armed or dangerous, indeed the report prepared by the officer involved are conspicuous for the absence of any observed behavior which could objectively support such a conclusion

The threat to officer's safety from issuing a traffic citation is a good deal less than in the case of a custodial arrest.  The danger to police officers flows from the fact of the arrest, and its adherent proximity, stress, and uncertainty.  Knowles v. Iowa, 525 U. S. 113 119 S. Ct. 484 (1998).

The danger of firearms justify precautions.  Terry's rule permits protective police searches on the basis of reasonable suspicion but as the Supreme Court has ruled, "an automatic firearm exception would rove too far".  Florida v. J. L. , 529 U. S. 269 125 S. Ct. 1375 (2000).

The defendant's motor vehicle was searched and certain items of contraband were seized. The Government claims these items were seized pursuant to an inventory search.

Inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard against the police from danger. A police officer may be allowed sufficient latitude to determine whether a

particular container should or not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgement based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.

No significant discretion is placed in the hands of the individual officer; he usually has no choice as to the subject of the search or its scope. A prime danger of insufficiently regulated inventory searches is the police may use the excuse of an "inventory search" as a pretext for broad searches of vehicles and their contents.

Our cases clearly hold that an inventory search is reasonable under the Fourth Amendment only if it is done in accordance with standard procedures that limit the discretion of the police. Police may open closed containers found within an impounded vehicle only if the inventory mandates the opening of all such containers.

The Supreme Courts decision in <u>South Dakota v. Opperman</u>, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 and <u>Illinois v. Lafayette</u>, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed. 2d 65 (1983) prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Standardized criteria , or established routine must regulate the opening of containers found during inventory searches based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice

governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime.

# ARGUMENT

## VOLUNTARINESS

The prosecution may not use statements, whether exculpatory or iculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of safeguards effective to secure the privilege against self-incrimination. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

After initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation. Additional safeguards are necessary when the accused asks for counsel; and when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

Before a criminal defendant's statement can be used against him, the government must

prove its voluntariness by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489, 92 S. Ct. 691, 626, 30 L. Ed.2d 618 (1972). Colorado v. Connelly, 479 U. S. 157 (1986) An inculpatory statement is voluntary only when it is the product of a rational intellect and a free will. Blackburn v. Arizona, 361 U. S. 199, 208, 80 S. Ct. 274 (1960). The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborn. Haynes v. Washington, 378 U.S. 503, 513-14, 83 S.Ct.; United States v. Tingle, 658 F. 2d 1332, 1335 (9th Cir. 1981).

A statement is involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." Hutto v. Ross, 429 U.S. 28, 30, 97S. Ct. 202, 203 50 L. Ed. 2d 194 (1976) quoting Bram v. United States, 168 U.S. 532, 542-43 S. Ct. 183, 186-87, 42 L.Ed. 568 (1897). This broadly stated rule has not been applied to invalidate, per se, all statements made by a suspect in response to a promise made by law enforcement personnel. The promise must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances.

Over time, our cases recognized two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment. See, e.g., Bram v. United States, 168 U.S. 532, 542 (1897) (stating that the voluntariness test "is controlled by that portion of the Fifth Amendment...commanding that no person shall be compelled in any criminal case to be a witness against himself"); Brown v. Mississippi, 297 U.S. 278 (1936) (reversing a criminal conviction under the Due Process Clause because it was based on a confession obtained

by physical coercion).

While Bram was decided before Brown and its progeny, for the middle third of the 20th century the rule against admitting coerced confessions rested primarily, if not exclusively, on notions of due process. The due process test takes into consideration "the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." Gallegos v. Colorado, 370 U.S. 49, 55 (1962); Rock v. Pate, 367 U.s. 433, 440 (1961) ("[All] the circumstances attendant upon the confession must be taken into account"); Malinski v. New York, 324 U.S. 401, 404 (1945) ("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant"). The determination "depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." Stein v. New York, 346 U.S. 156, 185 (1953).

In Miranda the Court expressly disapproved deceptive stratagems such as giving false legal advice, stating: "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." Miranda, 384 U.S. at 476, 86 S. Ct. at 1629.

A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given. See Lynumn v. Illinois, 372 U.S. 528, 534, 83 S. Ct. 917, 920 9 L.Ed. 2d 922 (1963).

Whether a confession is a product of coercion may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials. See Schnecklothe v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047.

The validity of a Miranda waiver and the voluntariness of a confession must be addressed separately and distinctly.  Edwards v. Arizona, 451 U. S. 477 (1981).

The delineation of custody depends upon the objective circumstances of the interrogation not on the subjective views harbored by the interrogating officers or the person being interrogated.  The subjective belief held by law enforcement officers are irrelevant in determining whether a person is in custody for purposes of Miranda warnings except to the extent those beliefs influence the objective conditions surrounding an interrogation.  Stansbury v. California 511 U.S. 318 (1994) Pennsylvania v. Muniz, 496 U.S. 582 (1990)

Questioning during a Terry stop can be a custodial interrogation necessitating Miranda warnings.  Miranda warnings are necessary even during a Terry stop if the suspect has been taken into custody or if the questioning otherwise takes place in a police dominated or compelling atmosphere.  United States v. Bautista, 684 F. 2d 1286 (9th cir. 1982).  Even where the stop is valid, the validity of the stop does not insulate it from the possible application of Miranda principles.  Berkemer v. McCarty, 468 U.S. 420 (1984).

Miranda warnings are required only when a person in custody is subjected to express questioning or its functional equivalent.  Rhode Island v. Innis, 446 U. S. 291 (1980).

The defendant in the present case alleges no warnings were provided him with respect to his rights under the Fifth Amendment during the custodial interrogation at the scene.  Additionally, the defendant executed no written waiver until after his booking and thereafter provided no further information  nor did he provide a written statement.  It appears that the defendant's admissions  were obtained in violation of his rights under Miranda and the product of an unlawful arrest/detention.  Upon all of the attendant circumstances, the defendant's

9

confession was not voluntary.

## **CONCLUSION**

For all of the reasons set forth above the defendant is entitled to the relief requested.

THE DEFENDANT

9/16/05    BY:   /s/ Vincent A. Bongiorni

Vincent A. Bongiorni, Esq.
95 State Street, Suite 309
Springfield, MA. 01103
(413) 732-0222
BBO #049040

CERTIFICATE OF SERVICE

I, Vincent A. Bongiorni, Esq., do hereby certify that I have served a copy of the foregoing to Assistant United States Attorney Paul Smyth, 1550 Main Street, Springfield, MA 01103. This 16th day of September, 2005.

/s/ Vincent A. Bongironi
Vincent A. Bongironi